# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 24-407** |
| **v.** | : | **DATE FILED:** |
| **RYAN STENWICK** | : | **VIOLATIONS:** |
| | | **18 U.S.C. § 1349 (conspiracy to commit** |
| | : | **wire fraud – 1 count)** |
| | | **18 U.S.C. § 1956(h) (conspiracy to commit** |
| | : | **money laundering – 1 count)** |
| | | **18 U.S.C. § 2261A(2)** |
| | | **(cyberstalking – 1 count)** |
| | : | **18 U.S.C. § 2261A(1) (stalking – 2 counts)** |
| | | **18 U.S.C. § 844(h) (use of fire in** |
| | : | **commission of a federal felony - 1 count)** |
| | | **18 U.S.C. § 2 (aiding and abetting)** |
| | : | **Notices of forfeiture** |

## SUPERSEDING INFORMATION

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

### Relevant Individuals, Entities, and Definitions

1.      "Cryptocurrency" was a class of financial instruments that allowed the transfer of value between individuals without any third-party mediation or government regulation. Cryptocurrencies existed entirely in digital format and not in any physical form. Such cryptocurrency was not issued by any government, bank, or company, but rather was generated and controlled automatically through computer software operated on a decentralized, "peer-to-peer" network sometimes using the "Blockchain" concept. The Blockchain for cryptocurrencies was the record of every transaction that had ever occurred in that particular cryptocurrency. It was often referred to as a "ledger" of all transactions. This transfer of cryptocurrency was accomplished with a set of cryptographic protocols. These protocols required that each transaction's sender and

receiver held an appropriate cryptographic key. Examples of cryptocurrencies in widespread use included Bitcoin and Ethereum.

2.    Cryptocurrencies were traded on cryptocurrency exchanges or marketplaces, where users could buy, sell, and trade cryptocurrencies. These exchanges were entirely digital, and transactions were typically performed over the Internet. Some cryptocurrency exchanges allowed direct conversions of cryptocurrencies into government-backed currencies such as U.S. dollars, while other exchanges only allowed buying, selling, and trading of cryptocurrencies.

3.    "Social engineering" is a type of fraud scheme wherein individuals call a potential victim and "socially engineer," or trick them into providing passwords, pins, and other personal information that the callers use to gain unauthorized access to the victim's private accounts, including cryptocurrency accounts, email accounts, bank accounts, and other valuable personal files.

4.    A "caller" is the name commonly used for the individuals involved in social engineering schemes who place calls to potential victims and falsely portray themselves as representatives of cryptocurrency exchanges or online account providers. Their goal is to give the victim enough confidence in their character that the victim will provide access to their online accounts.

5.    "Multi-factor authentication" or "MFA" is an electronic authentication method in which a user is granted access to an online application or account only after successfully presenting two or more distinct types of evidence (or factors) to an authentication mechanism.

MFA is commonly accomplished by generating and sending numeric codes via text to a user's cellular telephone number or via email to a user's email account.

6.    Subscriber Identity Module ("SIM") cards serve to identify a mobile phone on a mobile network belonging to telecommunications service provider.

7.    "SIM swapping" is a type of account takeover fraud that exploits weaknesses in authentication mechanisms targeting mobile telephones, allowing an unauthorized individual to take over a victim's telephone communications.   The SIM card associated with a victim's account and/or telephone number is switched with a SIM card in a device controlled by an unauthorized individual.   This is also known as "porting" the victim's telephone number.   By doing so, the unauthorized individual gains control of the victim's telephone number.

8.    A "holder" is the name commonly used for the individual in a SIM swapping scheme who holds the device that receives the victim's calls and messages once the SIM card  has been switched and/or the victim's phone number has been ported.   This individual receives the MFA codes needed to gain access to the victim's cryptocurrency or other online accounts and passes that code on to another individual who then accesses the victim's accounts.

**THE CONSPIRACY**

9.    From at least in or about January 2020 through in or about December 2024, in the Eastern District of Pennsylvania and elsewhere, defendant

**RYAN STENWICK**

conspired and agreed, with other individuals known and unknown to the United States Attorney, to commit wire fraud, that is, to knowingly devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses,

representations, and promises, and to transmit and cause to be transmitted certain wire communications in interstate and foreign commerce, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### OBJECT OF THE CONSPIRACY

10.    The object of the conspiracy was for defendant RYAN STENWICK and his conspirators to enrich themselves by:

a.    Identifying victims who owned funds in accounts held at cryptocurrency exchanges;

b.    Gaining access to the victims' accounts without authorization;

c.    Draining the victims' accounts by transferring funds to cryptocurrency addresses the conspirators controlled; and

d.    Dividing the stolen proceeds among themselves.

### MANNER AND MEANS

It was part of the conspiracy that:

11.    The conspirators obtained and collected databases containing personal identifying information of individuals, which they used to identify potential victims who held accounts at cryptocurrency exchanges.

12.    In many instances, the conspirators engaged in SIM swapping attacks, in which they took control of victims' phone numbers. Sometimes, they did so through corrupt telecommunications employees who had access to the telecommunications networks and could switch the SIM cards/port the victim's phone number to a new device.  Other times, the conspirators engaged in social engineering of telecommunications employees, pretending to be

customers or other employees trying to assist customers; the conspirators tricked the employees into revealing customer account information, which they then used to reset customer passwords.

13.     Once the conspirators changed a victim's phone number to a device controlled by another conspirator (*i.e.*, the holder), the holder received the requisite MFA codes and relayed them to the other conspirators.   The conspirators then used these MFA codes to access the victims' cryptocurrency and other online accounts.

14.     In other instances, the conspirators deployed remote access computer programs into the computer systems of telecommunication companies to perform SIM swaps on their targets. Conspirators also targeted telecommunication companies' physical store locations to steal remote access tablets to perform SIM swaps.

15.     In still other instances, the conspirators used leaked database information and/or personal information sold on black markets to gain access to victims' online accounts.

16.     The conspirators used the fraudulently obtained log-in information, passwords, MFA codes, and other means of identification to access victims' accounts at cryptocurrency exchanges, and to access other online accounts belonging to the victims, and transferred the victims' cryptocurrency into wallets controlled by the conspirators.

17.     In connection with this scheme, from on or about November 9, 2021, through on or about November 12, 2021, defendant RYAN STENWICK and other conspirators gained access to victim T.V.'s account, and stole approximately $1,000,000 in cryptocurrency.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

At all times material to this information:

1.    Paragraphs 1 through 8 and 10 through 17 of Count One of this information are incorporated here.

2.    Once they obtained victims' funds as described in Count One of this information, the coconspirators laundered the funds by transferring them through a multitude of cryptocurrency addresses, splitting the proceeds amongst each other.  They also frequently converted the stolen funds to other types of cryptocurrency and used online gambling sites to conceal the source of the funds.

3.    From at least on or about November 9, 2021, through on or about December 17, 2021, defendant

**RYAN STENWICK**

conspired and agreed with others known and unknown to the United States Attorney, to conduct and attempt to conduct financial transactions affecting interstate commerce, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which, in fact, involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## <u>COUNT THREE</u>

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

From on or about April 8, 2020 to on or about July 11, 2020, in the Eastern

District of Pennsylvania and elsewhere, defendant

**RYAN STENWICK,**

with the intent to harass and intimidate, used an interactive computer service, an electronic

communication service, and a facility of interstate and foreign commerce, to engage in a course

of conduct, including but not limited to swatting, distributing nude images, and forcing victim

K.M. to commit various depraved acts on video, and aided and abetted such conduct, that caused,

attempted to cause, and would be reasonably expected to cause substantial emotional distress to

victim K.M, and as a result of such conduct serious and life-threatening bodily injury resulted,

and such conduct caused K.M. to engage in a sexual act by threatening and placing K.M. in fear.

In violation of Title 18, United States Code, Sections 2261A(2)(B), 2261(b)(2),

2261(b)(3), 2261(b)(4), 2242(1), and 2.

## COUNT FOUR

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

On or about December 18, 2021, in the Eastern District of Pennsylvania and elsewhere, defendant

**RYAN STENWICK**

and others, aided, abetted, counseled, commanded, and induced Patrick McGovern-Allen, charged elsewhere, and Juvenile 1, a person known to the United States Attorney, to travel in interstate commerce from the state of New Jersey to Abington Township, Pennsylvania, with the intent to harass and intimidate another person, victim A.R., a juvenile, and in the course of and as a result of such travel caused substantial emotional distress to A.R. and placed a member of A.R.'s immediate family in reasonable fear of death or serious bodily injury, and defendant STENWICK aided and abetted the use of a dangerous weapon during the offense.

In violation of Title 18, United States Code, Sections 2261A(1), 2261(b), and 2261B, and 2.

8

## COUNT FIVE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

On or about December 18, 2021, in the Eastern District of Pennsylvania and elsewhere, defendant

**RYAN STENWICK**

and others, knowingly aided, abetted, counseled, commanded, and induced the use of fire, to commit stalking, in violation of Title 18, United States Code, Sections 2261A(1), 2261(b) and 2261B, a felony prosecutable in a court of the United States, as charged in Count Two of this information.

In violation of Title 18, United States Code, Sections 844(h)(1) and 2.

## COUNT SIX

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

On or about January 2, 2022, in the Eastern District of Pennsylvania and elsewhere, defendant

**RYAN STENWICK**

and others, aided, abetted, counseled, commanded, and induced Patrick McGovern-Allen, charged elsewhere, and Juvenile 1, to travel in interstate commerce from the state of New Jersey to Westtown-East Goshen Township, Pennsylvania, with the intent to harass and intimidate another person, K.M., and in the course of and as a result of such travel placed K.M. and others in reasonable fear of death or serious bodily injury, anddefendant STENWICK aided and abetted the use of a dangerous weapon during the offense.

In violation of Title 18, United States Code, Sections 2261A(1), 2261(b), and 2.

10

## <u>NOTICE OF FORFEITURE #1</u>

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

   1. As a result of the violation of Title 18, United States Code, Section 1349, set forth in this information, defendant

### RYAN STENWICK

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations, including, but not limited to:

   a. the sum of $1,000,000;

   b. one Apple iPhone 12 bearing IMEI Number 353044114078745;

   c. one Apple iPhone 13 bearing IMEI Number 359346679060594; and

   d. one Mac laptop bearing serial number J2HCJPLW1K.

   2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided
    without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

11

property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

## <u>NOTICE OF FORFEITURE #2</u>

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.    As a result of the violation of Title 18, United States Code, Section 1956(h) set forth in this information, defendant

### RYAN STENWICK

shall forfeit to the United States of America any property, real or personal, involved in such offenses, and any property traceable to such property, including, but not limited to:

    a.   the sum of $1,000,000;

    b.   one Apple iPhone 12 bearing IMEI Number 353044114078745;

    c.   one Apple iPhone 13 bearing IMEI Number 359346679060594; and

    d.   one Mac laptop bearing serial number J2HCJPLW1K.

2.    If any of the property described above, as a result of any act or omission of the defendant:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred to, sold to, or deposited with a third party;

    c.   has been placed beyond the jurisdiction of this Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

13

All pursuant to Title 18, United States Code, Section 982(a)(1).

**DAVID METCALF**
**UNITED STATES ATTORNEY**