IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 24-407 |
| RYAN STENWICK | : | |

**GOVERNMENT'S CHANGE OF PLEA MEMORANDUM**

I.   **BACKGROUND**

Defendant Ryan Stenwick is charged in a superseding information with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); one count of cyberstalking in violation of 18 U.S.C. 2261A(2); two counts of stalking in violation of 18 U.S.C. § 2261A(1), and aiding and abetting in violation of 18 U.S.C. § 2. The defendant has notified the government through his counsel that he wishes to plead guilty to the information.

II.   **APPLICABLE STATUTE AND ESSENTIAL ELEMENTS OF THE OFFENSE**

   A. **Conspiracy to Commit Wire Fraud and Money Laundering**

To obtain a conviction for conspiracy to commit wire fraud and money laundering the government must prove beyond a reasonable doubt that:

1. Two or more persons agreed to commit an offense against the United States, here wire fraud;

2. The defendant was a party to or member of that agreement;

3. The defendant joined the agreement or conspiracy knowing of its objective(s) to commit an offense against the United States and intending to join together with at least one other alleged conspirator to achieve those objectives; that is, that the defendant and at least one other alleged

conspirator shared a unity of purpose and the intent to achieve a common goal or objective, to commit an offense against the United States.

Third Circuit Model Criminal Jury Instruction 6.18.371A (Conspiracy)

For the underlying substantive offense of wire fraud, the government must prove beyond a reasonable doubt that:

1. The defendant knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises or willfully participated in such a scheme with knowledge of its fraudulent nature;

2. The defendant acted with the intent to defraud; and

3. In advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce

Third Circuit Model Instruction 6.18.13439.

For the defendant to be found guilty of conspiracy to commit money laundering, the government must prove each of the following elements beyond a reasonable doubt:

1. That on or about the dates alleged in the charging document, the defendant conducted or attempted to conduct a financial transaction, which affected interstate commerce;

2. That the defendant conducted the financial transaction with the proceeds of a specified unlawful activity, that is, wire fraud;

3. That the defendant knew the transaction involved the proceeds of some form of unlawful activity; and

4. That the defendant conducted the financial transaction with knowledge that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the wire fraud.

Third Circuit Model Instruction 6.18.1956A.

### B. Stalking Offenses

To prove cyberstalking, the government must show:

1. That the defendant used the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce.

2. That the defendant did so with the intent to harass another person; and

3. That through the use of the mail, computer interactive service, electronic communication service or system or other facility of interstate or foreign commerce, the defendant engaged in a course of conduct that:

    a. caused, attempted to cause or would be reasonably expected to cause substantial emotional distress to that person.

Fifth Circuit Model Jury Instruction 2.86B.

To prove stalking, the government must show:

1. That the defendant traveled in interstate or foreign commerce

2. That the defendant did so with the intent to kill, injure, harass, intimidate another person; and

3. That in the course of, or as a result of, such travel, the defendant engaged in conduct that placed that other person in reasonable fear of the death or serious bodily injury to that person, or a member of that person's immediate family.

Fifth Circuit Model Jury Instruction 2.86A.

### C. Fire in Commission of a Federal Felony

To prove a violation of using fire in commission of a federal felony, the government must show:

1. The defendant committed a felony for which he may be prosecuted in a court of the United States (here, stalking in violation of 18 USC 2261A)

2. The defendant used fire to commit that felony.

*United States v. Dougherty*, 98 F. Supp. 3d 721 (EDPA March 31, 2015); *United States v. Martin*, 523 F.3d 281, 292 (4th Cir. 2008).

**D. Aiding and Abetting**

To prove that the defendant aided and abetted the commission of a crime, the government must prove beyond a reasonable doubt that:

1. The principal committed an offense by committing each of the elements of the offense;

2. The defendant knew that the offense charged were going to be committed or were being committed by the principal;

3. The defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the principal in committing the offenses charged and with intent that the principal commit those offense; and

4. The defendant performed an act in furtherance of the offense committed by the principal.

Third Circuit Model Criminal Jury Instructions § 7.02.

**III.    MAXIMUM PENALTIES**

The following statutory maximum sentences apply in this case:

Count One, charging wire fraud conspiracy, 20 years' imprisonment, a 3 year period of supervised release, a $250,000 fine, and a $100 special assessment;

Count Two, charging money laundering conspiracy, 20 years' imprisonment, a 3 year period of supervised release, a $800,000 fine (that is, twice the value of the property involved in the transactions), and a $100 special assessment;

Count Three, charging cyberstalking up to a lifetime of incarceration, a 3 year period of supervised release, a $250,000 fine, and a $100 special assessment;

Count Four charging use of fire in commission of a felony, a mandatory minimum 10 years' imprisonment, a 3 year period of supervised release, and a $100 special assessment;

Count Five charging stalking, 10 years' imprisonment, a 3 year period of supervised release, a $250,000 fine, and a $100 special assessment;

Count Six, charging stalking, 10 years' imprisonment, a 3 year period of supervised release, a $250,000 fine, and a $100 special assessment.

The total permissible statutory maximum sentence is life imprisonment, 10 years' mandatory minimum imprisonment, a 3 year period of supervised release, $1,800,000 fine, and a $600 special assessment. Full restitution shall be ordered. Forfeiture may also be ordered.

## IV.    FACTUAL BASIS FOR THE PLEA

If this case were to proceed to trial, the government would prove the following facts, among others, through witness testimony and exhibits. This memorandum sets forth only the essential facts that would need to be proved to establish the elements of the offenses charged.

Defendant Ryan Stenwick was a member of a cybercriminal organization known as "the Com."[1] The group exists primarily on social media and online communication platforms. Members of the Com devote much of their lives to this cybercriminal network, and the crimes committed by the group are varied.

One of the principal crimes committed by the Com is "SIM swapping." SIM swapping is a type of account takeover fraud that generally exploits weaknesses in authentication mechanisms targeting mobile telephones, allowing criminals to take over a victim's telephone communications. Cyber criminals will generally change the SIM card associated with a victim's account and/or telephone number with a SIM card the criminal controls. Once the SIM card is changed, the criminal controls the victim's telephone number, which then can be used to reset accounts containing valuable property (such as cryptocurrency accounts) or other valuable information. Many online accounts are secured with authentication features that rely on the user controlling a particular mobile telephone number. Consequently, once a victim's

---

[1] The group is sometimes spelled as "the Comm" or just "Com."

telephone number has been stolen by one of the perpetrators, the perpetrators hijack the accounts that they are targeting.

The Com also exploits young women and girls who are recruited into the group. Sexually explicit images and videos obtained by members of the Com are then used to extort female members into producing more content or committing self-abuse and other acts of depravity for Com members' pleasure. Members of the Com also subject these girls and rivals within the group to "in real life" retribution, such as "swattings"[2] or "brickings."[3]

While a member of this group, in or about January 2020, the defendant and others initiated a scheme to steal cryptocurrency from victims. To execute the scheme, they identified people who owned cryptocurrency through databases of personal information and targeted them for thefts. The conspirators stole cryptocurrency in various ways, including by unlawfully accessing telecommunication companies' computer systems to gain access over victims' cell phone numbers and engaging in SIM swaps.

From approximately November 9, 2021, through November 21, 2021, the defendant and his cohorts stole approximately $1,000,000 in cryptocurrency from a person who resided in California (hereafter "Victim 1"). The defendant provided a list of targets to one of his coconspirators, who gained access to Victim 1's Gemini account by SIM swapping his phone to a device that the group controlled. The defendant and his coconspirators then transferred the victim's funds into a cryptocurrency wallet that they controlled. In total, the group stole

---

[2] A "swatting call" is a hoax call made to emergency services typically reporting an immediate threat to human life. The goal of the hoaxer is to draw a response from law enforcement—and specifically a SWAT team—to the victim's location. In the most egregious cases, the responsible party reports a crime of violence or an impending crime of violence to have a heavily armed law enforcement team dispatched to apprehend the victim of the call.

[3] A "bricking" is where an offender throws a large rock through a target's window.

approximately 10.96 Bitcoin (then worth approximately $700,000) and 90 Ethereum (then worth approximately $400,000) from Victim 1.

These funds were split between the members of the group, converted into different forms of cryptocurrency, and transferred through other cryptocurrency addresses and websites to obfuscate the source of the funds. The defendant received 6.2 Bitcoin worth approximately $400,000, and the funds were deposited into an account that he controlled. In the days that followed, the defendant transferred the money into other cryptocurrency wallets. Ultimately, a portion of the stolen funds were placed into an account that the defendant controlled which was part of an online gambling website. A portion of the stolen funds were also used to finance the shooting and firebombing, described below.

On or about July 11, 2020, the defendant and another coconspirator started a private Discord video chat with a young woman who had previously been the victim of the Com (hereafter "Victim 2"). The defendant instructed the victim to get "on camera" and she complied. The defendant and his coconspirator then forced Victim 2 to commit various depraved acts including cutting herself with a razor blade, cutting their initials into her thigh, masturbating with the blood, and committing other sexual acts and acts of self-harm. During the video, the defendant makes threats about informing the victim's mother and says that he will "blow [her] door off" if she does not comply. This is reference to swatting attacks that the defendant had previously initiated against the victim. A document found on the defendant's computer authored by the defendant confirms that he initiated these attacks to "degrade[] her life in every way possible."

On or about December 18, 2021, and January 2, 2022, the defendant paid Patrick McGovern-Allen, charged elsewhere, and a juvenile coconspirator, to travel from New Jersey

to the Eastern District of Pennsylvania to commit a firebombing at the residence of a juvenile target (hereafter "Victim 3") and a shooting at Victim 2's house. Victims 2 and 3 were previously targeted for harassment and swatting attacks by members of the Com.

On December 18, 2021, McGovern-Allen and his juvenile coconspirator smashed the first-floor window at Victim 3's home in Abington Township, Pennsylvania with a large rock and threw a lit Molotov cocktail at the house. The device struck the window frame and set the house on fire. Victim 3 was not home at the time, but her mother and stepfather were present. In the days that followed, the defendant bragged about the attack and took credit for it on Com-related social media platforms.

On January 2, 2022, McGovern-Allen and a juvenile coconspirator travelled from New Jersey to West Chester, Pennsylvania and fired eight bullets into Victim 2's house. The bullets traveled into the home and were later found in a wall, piano leg, table, and small stool. Victim 2's family reported fearing for their lives during the incident and stated that they remain in fear for their safety. Again, the defendant took credit for the shooting online.

Further investigation showed that the defendant paid McGovern-Allen approximately $20,000 in cryptocurrency for committing these acts. Another Com member acted as the "middleman" for these crimes, and held the cryptocurrency provided by the defendant in escrow until they were committed. Chat conversations recovered by investigators show the defendant communicating with the middleman to arrange for the attacks.

## V.    PLEA AGREEMENT

The parties have executed a plea agreement, that will be presented to the Court during a hearing regarding entry of the guilty plea. The agreement includes a supplement to be filed under seal.

## VI.    CONCLUSION

The government requests that the Court conduct a hearing under Federal Rule of Criminal Procedure 11 and if warranted then accept the defendant's plea of guilty.

                                                Respectfully submitted,

                                                DAVID METCALF
                                                United States Attorney

                                                */s Anthony J. Carissimi*
                                                ANTHONY J. CARISSIMI
                                                Assistant United States Attorney
                                                SARAH WOLFE
                                                Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Change of Plea Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Jordan Zeitz, Esquire
*Counsel for Ryan Stenwick*

/s Anthony J. Carissimi
ANTHONY J. CARISSIMI
Assistant United States Attorney

DATED: October 24, 2025.